UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORIANO MILLARE, | No. 2:20-cv-2072 DAD AC P |
| Plaintiff, | |
| v. | ORDER AND FINDINGS & RECOMMENDATIONS |
| STARR, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Currently before the court is defendants' motion for summary judgment. ECF No. 38.

I.     Procedural History

This case proceeds on plaintiff's first amended complaint (FAC) (ECF No. 15), which was screened and found to state a claim for relief against defendant Starr (ECF No. 16). Plaintiff's claims against defendants L. Fernando, K. Kesterson, KJ Allen, J. Flores, KD Johnson, L. Bird, E. Casillas, L. Fernando, and A. Ortega Shafer were dismissed by the court. Id. Following the close of discovery, defendant filed a motion for summary judgment (ECF No. 38), which is now fully briefed.

////

////

II. <u>Plaintiff's Allegations</u>

The FAC names eleven defendants, all of whom are officials or employees of Duel Vocational Institution (DVI). ECF No. 15. Plaintiff is mobility impaired, with restrictions to the ground floor and limited stair usage, and his claims arise from the alleged failure of DVI officials and staff to provide accommodations when plaintiff's college classes were held in locations that were not reasonably accessible to him due to the number of stairs. ECF No. 15 at 7-9. Plaintiff alleges that his requests for accommodation and access were inadequate or wrongfully denied or obstructed. <u>Id.</u>

Plaintiff brought multiple claims against each defendant, but only his first claim under the Americans with Disabilities Act (ADA) against defendant Starr (the Associate Warden and ADA Coordinator)[1] in his official capacity survived screening.[2] <u>Id.</u> at 14-15; <u>see also</u> <u>id.</u> at 2-4. Plaintiff's other claims and the other defendants were dismissed. ECF No. 16 at 3-6.

III. <u>Motion for Summary Judgment</u>

A. <u>Defendant's Arguments</u>

Defendant argues that he did not intentionally discriminate against plaintiff in violation of the ADA because defendant engaged in a "fact-specific investigation" after plaintiff alerted defendant about his need for accommodations. ECF No. 38 at 8-9. Defendant also argues that injunctive relief is unavailable to plaintiff because plaintiff is no longer housed at DVI—the institution where plaintiff was held when the alleged violation occurred—and the request for injunctive relief is therefore moot. <u>Id.</u> at 10-11.

---

[1] Plaintiff refers to defendant Starr as "she/her" (<u>see</u> ECF No. 15 at 2) but defendant's documents refer to Starr as "he/him" (<u>see</u> ECF No. 38 at 3). The court will follow defendant's designation and refer to defendant as he/him. If defendant would like to be referred to in another way, please inform the court.

[2] In plaintiff's opposition to the motion for summary judgment, he states that defendant Starr is being sued in his individual and official capacity. As stated in the screening order, plaintiff's claim is moving forward against defendant Starr in his official capacity only. ECF No. 16 at 4. A suit against defendant Starr in his official capacity is effectively a suit against the public entity, which is an appropriate defendant in an ADA action. <u>See</u> <u>Applegate v. CCI</u>, No. 1:16-cv-1343 MJS P, 2016 WL 7491635, at *5, 2016 U.S. Dist. LEXIS 180169, at *9 (E.D. Cal. Dec. 29, 2016); <u>Becker v. Oregon</u>, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001).

B.     Plaintiff's Response

At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record."

"Pro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-established that district courts are to "construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes upon a litigant," such as "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation omitted).

Accordingly, the court considers the record before it in its entirety despite plaintiff's failure to be in strict compliance with the applicable rules.  However, only those assertions in the opposition which have evidentiary support in the record will be considered.

Plaintiff argues that defendant did not provide plaintiff with a reasonable accommodation for his disability when his college program was moved to the gym where plaintiff still had to climb or descend more than six stairs.[3]  ECF No. 39 at 7.

////

////

---

[3] Plaintiff's opposition contains facts and statements related to the retaliation claim that was included in his complaint.  The court screened the initial complaint and the FAC, and in both screening orders found that plaintiff had stated only a claim under the ADA against defendant Starr in his official capacity.  To the extent plaintiff is trying to argue any other claim against defendants other than Starr, those claims and defendants will not be considered.

C. Defendant's Reply

Defendant admits in his reply that (1) "Plaintiff is an individual with a disability," (2) "he was otherwise qualified to attend the Delta College course," (3) "the course's location within the prison gymnasium created difficulties for Plaintiff due to the number of stairs and steepness of the alternative ramp, constructively excluding him from participation," and that (4) "said exclusion was the result of his disability." ECF No. 40 at 3. Defendant acknowledges that the steps he took to accommodate plaintiff's disability were inadequate, but argues that defendant did not intentionally discriminate against plaintiff. Id. at 4.

D. Plaintiff's Opposition to Defendant's Reply

Plaintiff filed an objection to defendant's reply, arguing that it was untimely because it was filed over seven days after plaintiff filed his opposition. ECF No. 41. Defendants filed a reply to this objection (ECF No. 42), correctly stating that under the current Local Rule 230(l), defendant had fourteen days to file his reply. Defendant thought that plaintiff may have been referring to an old version of Local Rule 230(l) and provided plaintiff with the most recent version. Plaintiff confirmed that he was using the old version and agreed that defendant had fourteen days to file a reply. ECF No. 43.

Plaintiff filed his opposition (ECF No. 39) on July 31, 2023, so fourteen days after this date would be August 14, 2023. See Local Rule 230(l) ("The moving party may, not more than fourteen (14) days after the opposition has been filed in CM/ECF, serve and file a reply to the opposition. "). Defendant filed his reply on August 15, 2023. However, the docket shows that plaintiff's opposition was entered in CM/ECF on August 2, 2023. It appears that plaintiff did not serve defendant directly, so defendant was likely notified of the opposition on August 2, 2023. See ECF No. 39 at 11. Therefore, defendant's reply is deemed timely filed on August 15, 2023, and the court accepts the reply. Plaintiff acknowledged his error about the number of days and attempted to file a sur-reply. See ECF No. 43.

Generally, parties do not have the right to file sur-replies, and motions are deemed submitted when the time to reply has expired. Local Rule 230(l). The court generally views motions for leave to file sur-replies with disfavor. Hill v. England, No. CVF05869 REC TAG,

4

2005 WL 3031136, at *1 (E.D. Cal. Nov. 5, 2005) (citing Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005)). However, district courts have the discretion to either permit or preclude a sur-reply. See U.S. ex rel. Meyer v. Horizon Health Corp., 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse discretion in refusing to permit "inequitable" sur-reply); JG v. Douglas County School Dist., 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in denying leave to file sur-reply where it did not consider new evidence in reply). In this Circuit, courts are required to afford pro se litigants additional leniency. E.g., Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012); Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

Here, defendant's reply does not contain new evidence, and plaintiff's sur-reply reiterates statements and information already included in plaintiff's opposition. See JG, 552 F.3d at 803 n.14. Therefore, the request to file a sur-reply is denied.

IV.     Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the

opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

Defendants simultaneously served plaintiff with notice of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for summary judgment.  ECF No. 38-3; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988) (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

V.     Defendant's Request for Judicial Notice

Defendant requests that the court take judicial notice of the fact that DVI was deactivated on September 30, 2021, and no longer operates as a prison.  See ECF No. 38 at 3 (citing Deuel Vocational Institution (DVI), California Department of Corrections and Rehabilitation, https://www.cdcr.ca.gov/facility-locator/dvi/ (last visited September 26, 2024)).  The court may take judicial notice of a fact that "is not subject to reasonable dispute because it: [¶] (1) is generally known within the trial court's territorial jurisdiction; or [¶] (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The court can take judicial notice of "'[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies."  Gerritsen v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (alteration in original); see O'Toole v. Northrop Grumman Corp., 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web."); Denius v. Dunlap, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on the website of a government agency).  The court may take judicial notice of material on the CDCR website.  George v. Diaz, No. 20-cv-03244 SI, 2020 WL 5073996, at *2,

2020 U.S. Dist. LEXIS 153581, at * 4-6 (N.D. Cal. Aug. 24, 2020). Therefore, the court grants defendant's request for judicial notice.

VI.     Undisputed Material Facts

Plaintiff is currently housed at the Correctional Training Facility. ECF No. 15 at 2. At all times relevant to the allegations, plaintiff was housed at DVI. Id. DVI was deactivated on September 30, 2021. ECF No. 38 at 3. At all times relevant to the allegations, plaintiff was an individual with the permanent disability designation "DLT." ECF No. 38-2 at 1, ¶ 1. An individual with the DLT classification can walk up and down at least six steps or stairs, but not an entire flight of stairs.[4] ECF No. 38-2 at 2, ¶ 2; see ECF No. 38-1 at 46. Plaintiff was enrolled in two Delta College courses at DVI, Public Speaking and Written Communication. ECF No. 38-2 at 1, ¶ 3. Both classes were initially held on the second floor of the education building, and plaintiff would have had to climb and descend more than six stairs to attend these classes. Id. at ¶¶ 4, 5.

On January 15, 2019, plaintiff filed a Reasonable Accommodation Request, informing defendant and other members of the Reasonable Accommodations Panel (or the panel) that he was enrolled in the Delta College program, that he was designated with the disability status of DLT, and that he would need to climb and descend more than six stairs to attend these courses, which he could not do. Id. at ¶ 6; ECF No. 15 at 24. Defendant and the Reasonable Accommodations Panel met on January 24, 2019, where they evaluated plaintiff's medical records and determined that plaintiff should be granted accommodations so that he could continue to attend the courses. ECF No. 38-2 at 2, ¶¶ 7, 8. In response to plaintiff's request, defendant and the panel moved the Written Communication course to the prison library and the Public Speaking course to the prison gymnasium. Id. at ¶ 9. The prison library has an occupancy capacity of

////

---

[4] Defendant's statement of undisputed facts says that "[a]n individual with the DLT classification should not be made to climb or descend more than six steps in a flight of stairs," and cites the CDCR's Reasonable Accommodation Request Process Desk Reference Manual. ECF No. 38-2 at 2, ¶ 2. The manual cited actually says that an individual with the DLT classification can walk up and down at least six steps or stairs, but not an entire flight of stairs. ECF No. 38-1 at 46.

thirty-three people, which was not large enough to accommodate the enrolment of the thirty-four-person Public Speaking course. Id. at ¶ 11-13.

On February 18, 2019, plaintiff filed an appeal about the panel's decision to move the Public Speaking course to the gym, stating that the gym was too cold and that he still needed to climb and descend stairs or use a steep ramp to attend class. Id. at ¶ 14. Plaintiff does not complain about relocating the Written Communication course to the library. Plaintiff was interviewed in February 2019 about his appeal, and prison staff reviewed the documents plaintiff attached about the issues raised in the appeal. Id. at ¶ 15. Plaintiff's appeal was denied on April 2, 2019, because the second level review agreed that plaintiff had been accommodated. Id. at 4, ¶ 16. Plaintiff withdrew from the Delta College program on March 19, 2019. Id. at ¶ 17. Plaintiff submitted a third level appeal on April 18, 2019. Id. at ¶ 18. On May 17, 2019, plaintiff's third level was denied. Id. at ¶ 19. The third level review determined that plaintiff's request was appropriately reviewed and considered by institutional medical staff, that the responses were consistent with the Armstrong Remedial Plan, and found that plaintiff did not require additional accommodations to access the gym. Id. at ¶ 20.

On July 19, 2019, the CDCR Office of Legal Affairs received an advocacy letter from the law firm Rosen Bien Galvan & Grundfeld, LLP. Id. at ¶ 21. The letter alleged that the panel failed to provide plaintiff with an adequate accommodation, expressed plaintiff's willingness to reenroll in the Delta College program, and requested that future Delta College classes at DVI be held in a location that was suitable to plaintiff's accommodation needs. Id. at 5, ¶ 22. In response to this letter, an inquiry was conducted into plaintiff's allegations. Id. at ¶ 23. On August 21, 2019, a memorandum was submitted about plaintiff's allegations, but it did not address whether plaintiff received adequate accommodation, so another inquiry was conducted. Id. at ¶¶ 24, 25. Plaintiff was interviewed again on December 16, 2019, and a memorandum was issued finding that the RAP panel failed to provide adequate accommodation to plaintiff. Id. at ¶ 28. In response to this, the Hiring Authority instructed defendant and others involved in the Reasonable Accommodations Panel and appeals process to undergo additional training regarding the Reasonable Accommodations Request process. Id. at ¶ 29. Defendant completed the

additional training on January 13, 2020.  Id. at ¶ 30.

VII. Discussion

    A. Americans with Disabilities Act

        i. Legal Standard

Title II of the ADA prohibits "discrimination on the basis of disability" by a public entity. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12132.  Title II applies to the services, programs, and activities provided for inmates within state prisons.  Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 208, 213 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1022-23 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir.1996).  "[A]n educational program is a program, and when it is provided by and in a state prison it is a program of a public entity." Armstrong, 124 F.3d at 1023 (citation omitted).

To state a claim under Title II, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability.  Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010), overruled on other grounds by Castro v. County of Los Angeles, 833 F.3d 1060, 1070 (9th Cir. 2016); McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004); see Lovell, 303 F.3d at 1052.

"A plaintiff can allege disability discrimination in the provision of inmate services, programs, or activities under the ADA by pleading either (1) discrimination based on disparate treatment or impact, or (2) denial of reasonable modifications or accommodations." Cravotta v. County of Sacramento, No. 2:22-cv-0167 DJC AC, 2024 WL 645705, at *7, 2024 U.S. Dist. LEXIS 26740, at *21 (E.D. Cal. Feb. 15, 2024); see Dunlap v. Ass'n of Bay Area Gov'ts, 996 F. Supp. 962, 965 (N.D. Cal. 1998) ("[T]he ADA not only protects against disparate treatment, it

also creates an affirmative duty in some circumstances to provide special, preferred treatment, or 'reasonable accommodation.'"). Although § 12132 does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i); see also Pierce v. County of Orange, 526 F.3d 1190, 1215 (9th Cir. 2008). Plaintiff bears the burden of proof to establish "the existence of specific reasonable accommodations" that the prison failed to provide. Memmer v. Marin County Courts, 169 F.3d 630, 633 (9th Cir. 1999).

The proper defendant in an ADA action is the public entity responsible for the alleged discrimination. United States v. Georgia, 546 U.S. 151, 153 (2006). State correctional facilities are "public entities" within the meaning of the ADA. See 42 U.S.C. § 12131(1)(A) & (B); Penn. Dept. of Corrs. v. Yeskey, 524 U.S. 206, 210 (1998); Armstrong, 124 F.3d at 1025. However, a state official sued in his official capacity is, in effect, a suit against the government entity and is an appropriate defendant in an ADA action. See Applegate, 2016 WL 7491635, at *5 (citing Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir. 2003); Kentucky v. Graham, 473 U.S. 159, 165 (1985)). A plaintiff also cannot assert a claim under § 1983 against a defendant in his individual capacity to vindicate rights created by the ADA. See Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002).

Under Title II, of the ADA, a plaintiff must show that he was excluded from participating in or denied the benefits of a program's services or otherwise discriminated against. Updike v. Multnomah County, 870 F.3d 939, 951 (9th Cir. 2017). "To recover monetary damages under Title II of the ADA . . . , a plaintiff must prove intentional discrimination on the part of the defendant," and the standard for intentional discrimination is deliberate indifference. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001) (citing Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998) (footnote omitted)). "Deliberate indifference requires both [1] knowledge that a harm to a federally protected right is substantially likely, and [2] a failure to

act upon that likelihood." Id. at 1139 (citing City of Canton v. Harris, 489 U.S. 378, 389 (1988)). "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required," and the first element of the deliberate indifference test is satisfied. Id. For the second element, when a public entity receives a request for accommodation, "[i]t is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." Id. The ADA creates a duty to gather sufficient information from the disabled individual and qualified experts to determine what accommodations are necessary. Id. The public entity is required to "'give primary consideration to the requests of the individual with disabilities' when determining what type of auxiliary aid and service is necessary." Id. (citing 28 C.F.R. § 35.160(b)(2)). "[A] public entity does not 'act' by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable." Id. (footnote omitted). Deliberate indifference does not occur when a duty of act is overlooked, or as a result of "bureaucratic slippage that constitutes negligence rather than deliberate action or inaction." Id. "[I]n order to meet the second element of the deliberate indifference test, a failure to act must be the result of conduct that is more than negligent, and involves an element of deliberateness." Id.

        ii.   Analysis

                a.   Claim for Damages

The parties do not dispute that plaintiff is a qualified individual with a disability and that he was qualified to receive the services and benefits of the public entity. See ECF No. 40 at 3 ("Defendant admits that (1) Plaintiff is an individual with a disability, (2) he was otherwise qualified to attend the Delta College course, (3) the course's location within the prison gymnasium created difficulties for Plaintiff due to the number of stairs and steepness of the alternative ramp, constructively excluding him from participation, and that (4) said exclusion was the result of his disability.").

Further, defendant seems to effectively concede that the accommodation provided to plaintiff was unreasonable, as he admits that the accommodation was "inadequate in moving the

12

Public Speaking course to the gymnasium." ECF No. 38 at 9; ECF No. 38-1 at 63 ("[I]t is confirmed the RAP panel failed to provide adequate accommodation to [plaintiff]."). Defendant does not argue in his motion that the accommodation was reasonable. Even without consideration of this implicit concession, the court finds plaintiff's request for accommodation to be reasonable, and defendant's accommodation unreasonable. It is undisputed that plaintiff's disability required him to have limited use of stairs, which prevented him from accessing his courses when they were located on the second floor of the prison. Thus, plaintiff's request to move the courses to rooms that he could access without stairs was a reasonable request. See Flentoil v. Santa Clara County Dept of Corrections, No. 18-cv-3486 EMC, 2020 WL 571025, at *10, 2020 U.S. Dist. LEXIS 19189, at *31 (N.D. Cal. Feb. 5, 2020) ("A plaintiff accordingly bears the burden of establishing the existence of specific reasonable accommodations that the defendant public entity failed to provide."). The court also finds that it was unreasonable to move the Public Speaking course to a room that still required plaintiff to climb stairs when that was the reason to move the course in the first place, and that this inadequate accommodation prevented plaintiff from continuing to participate in the Public Speaking course. See Duvall, 260 F.3d at 1137 ("[Plaintiff] must show that the accommodations offered by [defendant] were not reasonable, and that he was unable to participate equally in the proceedings at issue.").

The dispositive question is whether plaintiff was intentionally discriminated against when his requested accommodation was not provided. Defendant admits that plaintiff satisfied the first prong of the deliberate indifference test under the ADA by alerting the public entity to his need for accommodations.[5] ECF No. 38 at 9; see Duvall, 260 F.3d at 1139-40. Defendant argues, however, that he was not deliberately indifferent because the second prong of the test was not satisfied. Defendant states that he undertook a fact specific investigation, which gathered evidence from medical experts, ADA experts, and education experts. ECF No. 38 at 9. Defendant acknowledges that moving the Public Speaking course to the gymnasium was

---

[5] The prison was aware of plaintiff's mobility restrictions that required limited use of stairs (ECF No. 38-1 at 5-12), and plaintiff filed a reasonable accommodation request form, citing his limited use of stairs as the reason for the request (ECF No. 15 at 24).

13

inadequate, but argues that this "could be described as negligent" and "negligence is not enough to establish deliberate indifference or intentional discrimination." Id. at 9-10.

The court finds that there is a triable issue of material fact as to whether defendant acted appropriately and conducted an adequate fact-specific inquiry into what would constitute a reasonable accommodation for plaintiff in this situation. See Mark H. v. Hamamoto, 620 F.3d 1090, 1099 (9th Cir. 2010). Here, when the public entity received plaintiff's request for accommodation, it was "required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation" and gather sufficient information from plaintiff and qualified experts to determine what accommodations were necessary. Duvall, 260 F.3d at 1139. After plaintiff filed his request for accommodation, defendant states that he did engage in a fact-specific investigation with qualified experts. However, the only evidence defendant provides supporting this contention is the Reasonable Accommodation Panel response to plaintiff's request and an associated worksheet, listing the staff that were present for the meeting to review plaintiff's request (which included medical staff) and the response that the courses had been moved locations. ECF No. 15 at 25; ECF No. 38-1 at 48. There is no evidence about how the decision was made to move the Public Speaking course to the gymnasium, or how this move would accommodate plaintiff specifically, especially since the gym still had stairs. Duvall, 260 F.3d at 1139 ("[A] public entity does not 'act' by proffering just any accommodation: it must consider the particular individual's need when conducting its investigation into what accommodations are reasonable."). A memorandum submitted by defendant even states that "the RAP panel met and during the response the RAP panel failed to document how adequate accommodation would be made." ECF No. 38-1 at 62. Further, defendant's evidence shows that the teacher who moved the class did not know the gym had stairs. Id. It is reasonable to expect that during a fact-specific investigation, defendant would confirm that the new class location was appropriately accessible to plaintiff.

Even after plaintiff appealed the Reasonable Accommodation Panel's decision and notified defendant that moving the course to the gym was inadequate due to the stairs, defendant still found that the accommodation was proper. He fails, however, to show how this

14

determination was made.  See ECF No. 15 at 32-33.  In his appeal, plaintiff informed defendant that he was dissatisfied with the response because he still had to painfully climb stairs or use a steep ramp to attend the class in the gym.  ECF No. 15 at 26.  He also complained that the room was painfully cold.  In this first appeal, plaintiff requested that the class be moved back to the education building.[6]  ECF No. 15 at 26.  While plaintiff was no longer participating in the class at this time because he withdrew due to the stairs, defendant still reviewed the initial Reasonable Accommodation Panel response as part of the appeal and initially found that moving the course to the gym adequately accommodated plaintiff.  ECF No. 15 at 30-33.  The third level review of plaintiff's appeal states that the request was reviewed by medical staff and that it was determined that plaintiff was accommodated and able to access all programs with the current accommodations.  ECF No. 15 at 33.  However, neither the second level nor third level appeal explains how this determination was made or why it was determined that a room with stair access was appropriate for plaintiff.  Plaintiff states that while the gym was on the ground floor, there were still stairs going up to the gym, and once inside the gym, there were stairs to access the bleachers where the students sit to attend class.  ECF No. 38-1 at 81 (Pl.'s Depo 35:3-23).  While defendant agrees that there were stairs to the gym, a ramp that was not ADA compliant, and rows of stadium style bleachers (ECF No. 38-1 at 54, 62), the exact number of stairs is unclear.  See ECF No. 38-1 at 81 (Pl.'s Depo 35:3-23) (according to plaintiff there were more than five but less than ten stairs, plus additional stairs to access the bleachers); ECF No. 38-1 at 54, 62 (according to defendant, there were eight or nine stairs to access the gym, and stadium style seating).  Even given the opportunity to conduct another investigation based on plaintiff's appeal, defendant failed to show how a room that required stairs to access was appropriate when his disability required him to have limited use of stairs.

      The court acknowledges that defendant has provided evidence that further investigation was conducted into plaintiff's complaint about the course location, however this was done in

---

[6] In plaintiff's deposition, he states that when he filed this appeal, he was no longer participating in the class because of the stairs, but he filed the appeal to move the class back to the education building so his classmates did not have to take the class in the gym which was cold and unsuitable for learning.  ECF No. 38-1 at 82-83 (Pl.'s Depo 41:18-25, 42:1-6).

apparent response to a letter from an attorney that contacted defendant on plaintiff's behalf. ECF No. 38-1 at 65. It was also done *after* plaintiff appealed twice and was denied, and *after* plaintiff had withdrawn from the course. See ECF No. 38-1 at 52, 54-55, 57-58, 60, 62-63. And the result of the inquiry was to find that moving the Public Speaking course to the gymnasium was inadequate because plaintiff still had to climb stairs to access the course.

On this record a reasonable jury could find that defendant did not act appropriately or engage in a fact-specific investigation into plaintiff's specific accommodation request. Plaintiff's disability required limited use of stairs and his requested accommodation was to move the class to a location that he could access. In response, defendant moved the course to another location with stairs. While defendant said the library could not accommodate the number of people in the Public Speaking class, plaintiff states that there was another room in the prison that had more space. ECF No. 39-3 at 2-3; see id. at 10. Moving a class to a room with stairs when the original problem was stairs is more than "bureaucratic slippage" and more than negligence. While the court appreciates that defendant and other prison staff engaged in training about appropriate Reasonable Accommodation Panel responses (ECF No. 38-1 at 65-70), this does not demonstrate a fact specific inquiry regarding plaintiff's accommodation.

For all these reasons, there a genuine dispute of material fact about whether defendant deliberately failed to fulfill his duty to act in response to the request for accommodation. Defendant's motion for summary judgment should therefore be denied as to plaintiff's claim for damages under the ADA.

### b. Declaratory and Injunctive Relief

Defendant also argues that plaintiff is not entitled to injunctive relief because plaintiff is no longer housed at DVI. ECF No. 38 at 10. Defendant is correct that any request for injunctive relief request would be moot because plaintiff is no longer at DVI and DVI is now closed. See Shilling v. Crawford, 377 F. App'x 702, 704 (9th Cir. 2010) (unpublished); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991). The FAC does not expressly request injunctive relief. See ECF No. 15 at 21. It does, however, seek declaratory relief. Id. Such a claim for relief is also moot. See West v. Cortez, No. 22-cv-1897 EFB P, 2023 WL 8850045, at *2-3, 2023 U.S. Dist.

LEXIS 227661, at *6-7 (E.D. Cal. Dec. 21, 2023); Alvarez v. Hill, 667 F.3d 1061, 1064 (9th Cir. 2012) (holding claim for declaratory relief where plaintiff was released from prison).  The motion for summary judgment should be granted as to any request for declaratory or injunctive relief, and otherwise denied for the reasons previously explained.

VIII.  Conclusion

For the reasons set forth above, defendant's motion for summary judgment (ECF No. 38) should be granted in part and denied in part.

IX.  Plain Language Summary of this Order for a Pro Se Litigant

This court is recommending that defendant's motion for summary judgment be granted on the issue of declaratory and injunctive relief only.  The magistrate judge is recommending that your damages claim for disability discrimination move forward.  The magistrate judge finds that defendant has not provided evidence showing that he appropriately investigated your initial accommodation request to move the Public Speaking course to a room that you could access without climbing stairs.  That issue should go to trial.

CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's request for judicial notice be GRANTED; and
2. Plaintiff's request to file a sur-reply (ECF No. 43) be DENIED.

IT IS HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment (ECF No. 38) be GRANTED IN PART AND DENIED IN PART AS FOLLOWS:
   a. GRANTED as to declaratory and injunctive relief only, and
   b. Otherwise DENIED.
2. This case proceeds on the claim for disability discrimination under the ADA against defendant Starr.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 27, 2024

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE